UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BARTEE and DIXIE BARTEE,

    Plaintiffs,

v.

SKANSKA USA BUILDING, INC., f/n/a
ETKIN SKANSKA and/or ETKIN,
JOHNSON and KORB, INC., and/or ETKIN
SKANSKA CONSTRUCTION CO. OF     Case No. 04-72379
MICHIGAN,

    Honorable Patrick J. Duggan

    Defendant/Third-Party
    Plaintiff,

v.

CADILLAC IRON, INC.

    Third-Party Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, DENYING AS MOOT PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND/OR TO STRIKE DEFENDANT'S
NOTICE OF NON-PARTY FAULT, AND DENYING AS MOOT THIRD-PARTY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF CONTRACTUAL
INDEMNIFICATION**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on MAY 11, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

1

Plaintiffs Michael and Dixie Bartee, husband and wife, (collectively "Plaintiffs") filed this action after Michael Bartee (hereafter "Bartee") was injured during the construction of an elementary school in East China, Michigan. The East China School District ("school district") owned the property on which the school was being built. The school district hired Defendant Skanska USA Building, Inc. ("Skanska") as the project's construction manager. The school district also hired Third-Party Defendant Cadillac Iron, Inc. ("Cadillac") to perform the structural steel work for the project.

The following motions are presently before the Court: (1) Skanska's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure with respect to Plaintiffs' claims; (2) Skanska's motion for summary judgment, also pursuant to Rule 56(c), with respect to its contractual indemnification claim against Cadillac; and (3) Plaintiffs' motion for partial summary judgment and/or to strike Skanska's notice of non-party fault. The Court scheduled a hearing on these motions for April 14, 2005. At the hearing, Plaintiffs' counsel informed the Court that he only located Skanska's foreman for the project, Paul Saxon, recently and only had been able to interview Saxon the previous evening by telephone. In order to allow Plaintiffs to depose Saxon, the Court adjourned the hearing on the parties' motions until May 5, 2005.

## I.     Factual Background

On September 9, 2002, Bartee, an apprentice ironworker employed by Cadillac, was working at the East China elementary school project. While Bartee was eating lunch with Cadillac's other ironworkers on that date, he learned that shortly before a hot piece of metal had landed on the oxygen hose of Cadillac's acetylene torch and burned a hole in

2

it while two Cadillac ironworkers were using it. Cadillac's site superintendent, Mark Hoye, instructed the two Cadillac ironworkers to fix the hose after lunch.

Before the ironworkers finished their lunch, however, a steel truck arrived on the job site and the workers had to begin putting the newly arrived steel in place. Bartee was instructed to roll up the hose for the acetylene torch and "transport it into place." When the first piece of steel failed to fit into place, Bartee was instructed to grab the acetylene torch and take it up a ladder to one of Cadillac's journeymen to cut the end of the truss. Before climbing the ladder, Bartee reminded Hoye that the oxygen hose had a hole in it. Hoye told Bartee to take the torch up anyway and to put his glove over the hole and hold it as tightly as he could. Hoye told Bartee that they would fix the hose after they fixed the truss.

Bartee did as he was told and held the hose while another Cadillac employee used the acetylene torch to cut the truss. During this process, however, oxygen leaking from the hole in the hose caused a spark to ignite, which in turn burned Bartee.

Plaintiffs concede that they do not know whether anyone employed by Skanska was aware of the hole in the oxygen hose. Saxon testified that he was unaware of the hole in the oxygen hose and that he was 100 to 200 feet away from the area where Bartee was injured at the time of the accident. There is no dispute that the acetylene torch involved in the accident was owned and supplied by Cadillac and was used only by Cadillac employees. Finally, there is no dispute that the work Bartee was performing at the time of the accident was pursuant to Hoye's direction.

**II.     The Complaint and Third-Party Complaint**

3

On June 28, 2004, Plaintiffs filed the pending complaint alleging numerous basis for Skanska's liability, most of which fall under a cause of action for negligence. Specifically, Plaintiffs allege that Skanska was directly negligent in the following ways:

i. it negligently failed to select, employ and retain, in its service, a careful and competent steel erector, when undertaking inherently dangerous work;

ii. it retained a right of control over the performance of the work and was negligent in its job supervision and inspection;

iii. it violated its non-delegable duty to provide plaintiff a safe site;

iv. it violated its non-delegable duty to provide the plaintiff with a safe place to work;

v. it failed to warn plaintiff of hazardous equipment and methods of work of which it was aware, or should have been aware, and of which plaintiff was not aware;

vi. it failed to provide safety and health requirements for multi-employer construction projects in violation of the American National Standards Institute (ANSI) . . .

vii. it gave ambiguous orders and acquiesced in negligent methods of work;

viii. it undertook to administer the contract between the East China School District or the Defendant Skanska and Cadillac Iron, Inc., and did so negligently;

ix. it acquiesced in readily observable violations of applicable administrative regulations, industry standards and codes, and contract provisions governing the work, had the power to stop the work, or correct the violations, and negligently failed to do so.

*See* Compl. ¶ 9a.  Plaintiffs also allege eleven acts of negligence by Skanska's contractor, Cadillac, for which they allege Skanska is vicariously liable.  Plaintiffs also allege causes of action for (1) nuisance *per accidens*, (2) breach of third-party beneficiary contract; (3) "construction manager malpractice;" and (4) premises liability.

In response to Defendant's motion for summary judgment, Plaintiffs' counsel vigorously argued that all of Plaintiffs' claims are supported by the facts and law. At the May 5 hearing, however, Plaintiffs' counsel informed the Court that only three theories of liability set forth in Plaintiffs' complaint survive the Michigan Supreme Court's decision in *Ormsby v. Capital Welding, Inc.*, 471 Mich. 45, 684 N.W.2d 320 (2004). According to Plaintiffs' counsel, those three basis for liability are: (1) active negligence; (2) nuisance *per accidens*; and (3) agency.[1] The Court asked Plaintiffs' counsel what Skansa did that he believes constitute active, as compared to passive, negligence. Despite counsel's answer, this Court is not clear what conduct Plaintiffs still claim constituted negligence by Skansa. Thus the Court will address the numerous allegations of misconduct set forth in Plaintiffs' complaint.

On August 18, 2004, Skanska filed a notice of non-party fault, naming Cadillac as the entity responsible for Plaintiffs' injuries. The following day, Skanska filed a third-party complaint against Cadillac alleging that Cadillac must indemnify and defend Skanska with respect to Plaintiffs' complaint pursuant to the terms of the contract Cadillac entered into with the school district.

**III.   Standard for Summary Judgment**

---

[1]Plaintiffs have not alleged a specific claim of "agency" in their complaint. To the extent this claim is set forth in another count, the Court will address it below. To the extent this claim has not been set forth in the complaint, the Court will not consider it in response to Defendant's motion for summary judgment. *See Tucker v. Union of Needletrades, Indus., and Textile Employees*, No. 04-3312, slip op. at 4 (6th Cir. May 10, 2005)(upholding district court's refusal to consider claim raised in response to the defendants' motion for summary judgment that had not been alleged in the plaintiff's complaint). In any event, the facts that supported an agency relationship in the case relied upon by Plaintiffs– *Caldwell v. Cleveland-Cliffs Iron Co.*, 111 mich. App. 721, 315 N.W.2d 186 (1981)– are absent here.

5

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

### IV.   Applicable Law and Analysis

As Skanska points out, several of Plaintiffs' alleged causes of action are not cognizable under Michigan law or are not supported by the facts of this case.

#### A.   Negligent Selection of Subcontractor

Plaintiffs allege that Skanska "negligently failed to select, employ, and retain, in its service, a careful and competent steel erector, when undertaking inherently dangerous work." As the Michigan courts have noted, however, "Michigan has not recognized a duty requiring an employer to exercise care in the selection and retention of an independent contractor." *Reeves v. K-Mart Corp.*, 229 Mich. App. 466, 475-76, 582 N.W.2d 841, 846 (1998). This claim therefore fails.

#### B.   Failure to Warn and Premises Liability

Plaintiffs also allege that Skanska "failed to warn plaintiff of hazardous equipment . . . of which it was aware, or should have been aware . . ." and, for the same reason, is

6

liable under a premises liability cause of action. Putting aside the issue of whether a general contractor has a duty to warn of hazardous equipment belonging to and under the control of a subcontractor, the Court finds that Plaintiffs cannot succeed on these theories of liability because there is no dispute that Bartee knew about the hole in the hose of the acetylene torch and the danger of using the torch in this condition. *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 681 (1992)(noting that "where dangers are *known* to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.") Moreover, the evidence establishes that Skanska was not aware of the hole in the acetylene torch hose and there is no evidence to indicate that it should have been aware of the hose's condition. Finally, Plaintiff's premises liability claim also fails because the the construction site itself– i.e. the premises– was not rendered unreasonably dangerous as a result of the acetylene torch's unsafe condition. *See Muscat v. Khalil*, 150 Mich. App. 114, 126, 388 N.W.2d 267, 273 (1986)(upholding trial court's dismissal of premises liability claim based on unsafe ladder provided by homeowner's to plaintiff because "the premises was not rendered unreasonably dangerous by the introduction of a ladder which did not contain warning labels since the premises itself was entirely unaffected.") For the above reasons, Plaintiffs' premises liability and failure to warn claims fail.

      **C.**    **Breach of Third-Party Beneficiary Contract**

Plaintiffs allege that Bartee was a third-party beneficiary of the various construction contracts that set forth Skanska's responsibility for job safety and the

adequacy of the equipment used at the job site and that Skansa breached its responsibilities. Under Michigan law, "[t]hird-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of contract." *Dynamic Constr. Co. v. Barton Malow Co.*, 214 Mich. App. 425, 428, 543 N.W.2d 31, 33 (1995)(citations omitted). "A person who incidentally benefits from the performance of some duty required under a contract has no rights under the contract." *Id.* For these reasons, "[c]ontractors, subcontractors, and their employees are generally held not to be the third party beneficiaries of the contracts between the general or supervisory contractor and the project owner." *Id.* Plaintiffs fail to set forth an express provision in the construction contracts whereby Skansa promised to act to the benefit of Cadillac's employees. Thus this claim must be dismissed.

### D. Nuisance Per Accidens

As the Michigan courts have explained this doctrine:

> "Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property."

*McDowell v. City of Detroit*, 264 Mich. App. 337, 348-49, 690 N.W.2d 513, 521 (2004)(quoting *Rosario v. City of Lansing*, 403 Mich. 124, 132-33, 268 N.W.2d 230, 233 (1978)). Liability for a nuisance *per accidens* depends upon the defendant's control:

> We have found no authority imposing liability for damage cause by a nuisance where the defendant has not either created the nuisance, owned or controlled the property from

8

>   which the nuisance arose, or employed another to do work
>   which he knows is likely to create a nuisance.

*Steman v. Coffman*, 92 Mich. App. 595, 598, 285 N.W.2d 305, 306 (1979)(citing 58 AM. JUR. 2D *Nuisances* § 49, p. 616); *see also Cloverleaf Car Co. v. Phillips Petroleum Co.*, 213 Mich. App. 186, 191, 540 N.W.2d 297, 300-01 (1995)(citing RESTATEMENT (SECOND) of TORTS § 384, p. 149).

Skanska neither owned nor controlled the acetylene torch that injured Bartee; nor did Skanska's employees create the hole in the hose of the torch. Even if Skanska employed Cadillac– which the evidence suggests it did not– Cadillac's work (including use of the acetylene torch) was not likely to create a nuisance. The Court therefore finds that Skanska is entitled to summary judgment with respect to Plaintiffs' nuisance *per accidens* claim.

### E.   Negligence

Plaintiffs' remaining claims, including its separately alleged claim for "construction manager malpractice," allege negligence by Skanska based on general contractor liability. In other words, Plaintiffs' remaining claims allege that Skanska was negligent in failing to properly oversee its subcontractor and prevent its negligence or that Skanska is vicariously liable for its subcontractor's negligent acts.

At common law, general contractors generally could not be held liable for the negligence of independent subcontractors and their employees. *Ormbsy*, 471 Mich. at 48, 684 N.W.2d at 323. The Michigan courts, however, have recognized one exception to this general rule, "holding that, under certain circumstances, a general contractor could be

9

held liable under the 'common work area doctrine' . . ." *Id.* (citing *Funk v. Gen. Motors Corp.*, 392 Mich. 91, 104-05, 220 N.W.2d 641 (1974)). For a general contractor to be held liable under this doctrine, a plaintiff must establish each of the following elements:

> (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area.

*Id.* Plaintiffs' negligence claims fail because the hole in the hose of the acetylene torch did not create a high degree of risk to a significant number of workmen and the torch was not being used in a common work area.

As the Michigan Supreme Court explained in *Ormbsy* with respect "common work area:"

> This Court has previously suggested that the Court's use of the phrase "common work area" in *Funk* . . . suggests that the Court desired to limit the scope of a general contractor's supervisory duties and liability. We thus read the common work area formulation as an effort to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard. In the first instance, each subcontractor is generally held responsible for the safe operation of its part of the work.

*Id.* at 57 n.9, 684 N.W.2d at 328 n.9. Bartee and the Cadillac journeyman holding the acetylene torch were 30 feet above the ground, working on a unique project– securing newly arrived iron. Plaintiffs present no evidence to indicate that any other subcontractors' employees worked in this vicinity. Thus the Court finds that Plaintiffs

10

cannot establish the existence of a "common work area." Moreover, the only other workman in Bartee's vicinity– that being the journeyman holding the acetylene torch– was not injured as a result of the hole in its hose. Thus the Court also finds that Plaintiffs cannot show that the condition of the hose created a high degree of risk to a significant number of workmen.

As Plaintiffs cannot establish the four elements of the "common work area doctrine," the general rule regarding general contractor liability applies. In other words, Skanska cannot be held liable for any negligent acts of its subcontractors. As such, the Court holds that Plaintiffs' remaining negligence claims must be dismissed.

As the Court finds that Skanska is entitled to summary judgment with respect to all of Plaintiffs' claims, the Court will not address Skanska's motion for summary judgment with respect to its third-party complaint against Cadillac for indemnification. The Court also finds Plaintiffs' motion moot.

Accordingly,

**IT IS ORDERED**, that Skanska's motion for summary judgment against Plaintiffs is **GRANTED**;

**IT IS FURTHER ORDERED**, that Skanska's motion for summary judgment against Cadillac on Skanska's third-party complaint is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Plaintiffs' motion for partial summary judgment and/or to strike Skanska's notice of non-party fault is **DENIED AS MOOT**.

_____

              s/PATRICK J. DUGGAN
              UNITED STATES DISTRICT JUDGE

Copies to:
Richard L. Steinberg, Esq.
Jerome A. Galante, Esq.
Mark R. Johnson, Esq.